Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd., #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNIE WEISS,<br><br>Plaintiff,<br><br>vs.<br><br>NANTKWEST, INC., PATRICK SOON-SHIONG, BARRY J. SIMON, JOHN C. THOMAS, JR., FREDERICK W. DRISCOLL, MICHAEL D. BLASZYK, and CHERYL L. COHEN,<br><br>Defendants. | Case No. **'21CV280  BEN KSC**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Annie Weiss ("Plaintiff"), on behalf of herself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against NantKwest, Inc. ("NantKwest" or the "Company") and the members of NantKwest's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which NantKwest will merge with ImmunityBio, Inc. ("ImmunityBio") through NantKwest's wholly owned subsidiary Nectarine Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On December 21, 2020, NantKwest and ImmunityBio issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated December 21, 2020 (the "Merger Agreement") to merge NantKwest with ImmunityBio. Under the terms of the Merger Agreement, the stockholders of ImmunityBio will receive 0.8190 of a share of NantKwest common stock for each share of ImmunityBio common stock they own (the "Merger Consideration"). Upon the closing of the merger, ImmunityBio stockholders are expected to own approximately 72% of the combined company's stock, while NantKwest stockholders are expected to own approximately 28% of the combined company's stock.

3. On February 2, 2021, NantKwest filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that NantKwest stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and ImmunityBio's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by one of the special committee of the Board's ("Special Committee") financial advisors, Barclays Capital Inc. ("Barclays"); and (ii) the potential conflicts of interest faced by the Special Committee's advisors, Barclays and Health Advances LLC ("Health Advances"). Defendants authorized the

issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.   In short, unless remedied, NantKwest's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.   This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.   The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.   Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8.   Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of NantKwest.

- 3 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9. Defendant NantKwest is a Delaware corporation, with its principal executive offices located at 3530 John Hopkins Court, San Diego, California 92121. The Company is a clinical-stage immunotherapy company focused on harnessing the power of the innate immune system to treat cancer and infectious diseases. NantKwest's common stock trades on the Nasdaq Global Select Market under the ticker symbol "NK."

10. Defendant Patrick Soon-Shiong ("Soon-Shiong") has served as Executive Chairman of the Board and Chief Executive Officer ("CEO") of the Company since March 2015 and has been a director of the Company since January 2020. Defendant Soon-Shiong and his affiliates beneficially own approximately 88.9% of the outstanding shares of ImmunityBio common stock.

11. Defendant Barry J. Simon ("Simon") has been President and Chief Administrative Officer of the Company since January 2017 and has been a director since 2007. Defendant Simon previously served as President and Chief Operating Officer from March 2015 to December 2016 and as President and CEO from 2007 to March 2015.

12. Defendant John C. Thomas, Jr. ("Thomas") has been a director of the Company since April 2014.

13. Defendant Frederick W. Driscoll ("Driscoll") is Lead Independent Director and has been a director of the Company since September 2017.

14. Defendant Michael D. Blaszyk ("Blaszyk") has been a director of the Company since July 2015.

15. Defendant Cheryl L. Cohen ("Cohen") has been a director of the Company since June 2019.

16. Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

17. ImmunityBio is a late-stage immunotherapy company developing next-generation therapies that drive immunogenic mechanisms for defeating cancer and infectious disease. ImmunityBio's immunotherapy platform is designed to activate both the innate (natural killer cell and macrophage) and adaptive (T cell) immune systems to create long-term "immunological memory," an approach designed to eliminate the need for high-dose chemotherapy, improve the outcomes of current CAR T-cell therapies, and extend beyond checkpoint inhibitors. ImmunityBio has established three fundamental platforms to drive long-term immunological memory. These include first-in-class antibody cytokine fusion proteins, synthetic immune modulators, and second-generation vaccine vector platforms. ImmunityBio's lead cytokine infusion protein, a novel interleukin-15 ("IL-15") superagonist complex ("Anktiva"), has received Breakthrough Therapy Designation from the U.S. Food and Drug Administration ("FDA") for BCG-unresponsive CIS non-muscle invasive bladder cancer ("NMIBC"). Other indications currently at registration-stage trials include BCG-unresponsive papillary bladder cancer, first- and second-line lung cancer, triple-negative breast cancer, metastatic pancreatic cancer, recurrent glioblastoma, and soft tissue sarcoma in combination with the company's synthetic immune modulator ("Aldoxorubicin"). ImmunityBio is also developing therapies, including vaccines, for the prevention and treatment of HIV, influenza, and the coronavirus SARS-CoV-2 with its second-generation human adenovirus ("hAd5") vaccine platform.

18. Merger Sub is a Delaware corporation and a wholly owned subsidiary of NantKwest.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

19. NantKwest is a clinical-stage immunotherapy company focused on harnessing the power of the innate immune system to treat cancer and infectious diseases. NantKwest is the leading producer of clinical dose forms of off-the-shelf natural killer ("NK") cell therapies. The activated

NK cell platform is designed to destroy cancer and virally-infected cells. The safety of these optimized, activated NK cells—as well as their activity against a broad range of cancers—has been tested in phase I clinical trials in Canada and Europe, as well as in multiple phase I and II clinical trials in the United States. By leveraging an integrated and extensive genomics and transcriptomics discovery and development engine, together with a pipeline of multiple, clinical-stage, immuno-oncology programs, NantKwest's goal is to transform medicine by bringing novel NK cell-based therapies to routine clinical care. NantKwest is a member of the NantWorks ecosystem of companies.

**The Proposed Transaction**

20. On December 21, 2020, NantKwest and ImmunityBio issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> CULVER CITY & EL SEGUNDO, Calif., December 21, 2020 — ImmunityBio, a privately-held immunotherapy company, and NantKwest, Inc. (NASDAQ: NK), a clinical-stage, natural killer cell-based therapeutics company, today announced they have entered into an agreement to merge in a stock-for-stock transaction. The combination will create a leading immunotherapy and cell therapy company focused on oncology and infectious disease.
>
> Together, ImmunityBio and NantKwest will have a broad, clinical-stage pipeline – including 13 assets in clinical trials and 11 in Phase II to III – as well as a robust early stage pipeline to address other difficult to treat cancers. The combination of NantKwest's Natural Killer (NK) cell platform and ImmunityBio's immunotherapy fusion protein, immunomodulator, and adenovirus platforms have already resulted in complete responses in late stage, difficult to treat metastatic cancers. To date complete responses have been noted in patients with second line or greater metastatic pancreatic cancer, triple-negative breast cancer, head and neck cancer, and Merkel Cell Carcinoma. This strong track record of combination immunotherapies across the two companies' platforms supports the potential of the combined assets to transform the future of immunotherapy beyond checkpoints by synergizing NantKwest's cell-based therapies with ImmunityBio's immunotherapy platforms.
>
> In a separate press release issued today, ImmunityBio announced that ImmunityBio's IL-15 fusion protein, Anktiva, with FDA Breakthrough Therapy status for non-muscle invasive bladder cancer CIS, has achieved primary endpoint with 72% complete response.
>
> ImmunityBio was founded by Dr. Patrick Soon-Shiong, MD, a physician and scientist who invented Abraxane for the treatment of metastatic breast cancer, lung cancer and advanced pancreatic cancer. The companies, including their operations, are aligned

given their long-standing collaboration programs with opportunity for advancing clinical development of the late stage Phase II and III trials.

Dr. Soon-Shiong said, "We are developing next-generation immunotherapies to defeat cancer and infectious disease.  By combining ImmunityBio's immunotherapy platform, which includes the Anktiva IL-15 superagonist, with NantKwest's natural killer cell platform, the merged entity will have a powerful and broad product portfolio that can activate both the innate (natural killer cell and macrophage) and adaptive (T cell) immune systems to create long-term immunological memory.  What distinguishes the merged entity is the late stage immunotherapy product pipeline that is designed to eliminate the need for high-dose chemotherapy, improve the outcomes of current CAR T cell therapies, and extend beyond checkpoint inhibitors.  With 13 clinical trials across multiple tumor types at Phase I to III and with the combined talent in research, clinical development and manufacturing, the merged entity is poised to be a leader in the immunotherapy space."

"We are excited to join forces with ImmunityBio, a company and team we have collaborated with for many years across our platforms," said Rich Adcock, NantKwest Chief Executive Officer.  "With the integration of ImmunityBio's pipeline, cutting-edge R&D capabilities, talented employees and clinical expertise, we expect to accelerate the delivery of new treatments for patients with unmet needs.  Together we can unlock the combined potential of our assets, and look forward to building on our continued success as one company."

Michael Blaszyk, an independent director of NantKwest and member of the Special Committee stated, "This transaction is a compelling opportunity to drive value creation for shareholders.  Our Special Committee carefully evaluated the ImmunityBio proposal and determined it is in the best interests of shareholders and also benefits other stakeholders, including our employees, partners and patients."

ImmunityBio is a leading late stage immunotherapy company activating both the innate (natural killer cell and macrophage) and adaptive (T cell) immune system to treat serious unmet needs within oncology and infectious diseases.  Founded in 2014 and headquartered in Culver City, ImmunityBio's platform is designed to overcome limitations of the current standards of T cell-based immunotherapies, including checkpoint inhibitors and CAR-T cells.  The company has established a robust next generation immunotherapy clinical pipeline with a strategy toward registrational intent in various indications, beyond checkpoint therapy treatment alone.

**Strategic and Financial Rationale**

Key attributes of the combined company will include:

- **Expansive clinical-stage pipeline and intellectual property portfolio**. 13 assets in clinical trials, including 11 in Phase II to III clinical trials, as well as a strong global intellectual property portfolio of issued and pending worldwide patent applications with patent life extending to 2035 and beyond.

- **Differentiated technology and assets**. Best-in-class combined discovery and development platforms for novel therapies and next-generation early-stage candidates across immunotherapy, neoepitopes and molecules enhancing allogeneic and autologous NK and T-cell therapies.
- **Significant market opportunity**. Well positioned to combine expertise, platforms and resources to address patients across oncology and infectious disease.
- **Cutting-edge cell manufacturing expertise and ready-to-scale facilities**. Extensive and seasoned R&D, clinical trial, and regulatory operations and development teams, which together will occupy over 200,000 square feet of manufacturing and R&D facilities.
- **Improved ability to combine platforms and therapies**. The transaction improves the ability to more seamlessly combine programs and leverage resources and expertise across both companies' platforms, ultimately strengthening the efforts of both companies on behalf of patients to drive better outcomes in the fight against oncology and infectious disease.
- **Significant potential for strategic and financial synergies**. This opportunity will come from meaningful streamlining of clinical operations, therapeutic discovery and development, and manufacturing.

**Transaction Details**

The transaction is structured as a tax-free 100% stock-for-stock merger, with ImmunityBio to reverse merge with NantKwest. Under the terms of the agreement, ImmunityBio shareholders will receive a fixed exchange ratio of 0.8190 shares of NantKwest for each share of ImmunityBio owned. Upon completion of the transaction, on a fully diluted basis, ImmunityBio shareholders will own approximately 72% of the combined company and NantKwest shareholders will own approximately 28% of the combined company, on a fully diluted basis.

A Special Committee of the NantKwest Board of Directors, consisting of independent Directors, undertook a thorough review of the transaction and unanimously recommended that the company proceed with the transaction.

The transaction, which is expected to close in the first half of 2021, is subject to shareholder approval by a majority of unaffiliated shareholders of NantKwest, in addition to other customary closing conditions. There is no filing requirement under the Hart-Scott-Rodino Antitrust Improvements Act for this transaction.

Following the closing of the transaction, the combined company will assume the ImmunityBio name and continue to be listed on the NASDAQ exchange. However, the combined company ticker symbol is expected to be changed to IBRX.

**Leadership**

    Richard Adcock will become the CEO of the combined company, and Dr. Soon-Shiong will serve as Executive Chairman of the Board. The combined company will be headquartered at ImmunityBio's offices in Culver City, California.

**The Proxy Statement Contains Material Misstatements or Omissions**

21. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to NantKwest's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

22. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and ImmunityBio's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by one of the Special Committee's financial advisors, Barclays; and (ii) the potential conflicts of interest faced by the Special Committee's advisors, Barclays and Health Advances.

***Material Omissions Concerning NantKwest's and ImmunityBio's Financial Projections and Barclays' Financial Analyses***

23. The Proxy Statement omits material information regarding NantKwest's and ImmunityBio's financial projections.

24. For example, with respect to the NantKwest Management Projections, NantKwest Consultant Projections, ImmunityBio Management Projections, and ImmunityBio Consultant Projections, the Proxy Statement fails to disclose unlevered free cash flows and the line items underlying the unlevered free cash flows.

25. The Proxy Statement also omits material information regarding Barclays' financial analyses.

26. The Proxy Statement describes Barclays' fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Barclays' fairness opinion

and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, NantKwest's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Barclays' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

27. With respect to Barclays' *Discounted Cash Flow Analysis – NantKwest*, the Proxy Statement fails to disclose: (i) quantification of the terminal value of NantKwest as of December 31, 2044; and (ii) quantification of the individual inputs and the assumptions underlying the range of discount rates of 11.00% to 13.00%.

28. With respect to Barclays' *Discounted Cash Flow Analysis – ImmunityBio*, the Proxy Statement fails to disclose: (i) quantification of the terminal value of ImmunityBio as of December 31, 2044; (ii) quantification of the individual inputs and the assumptions underlying the range of discount rates of 11.00% to 13.00%; and (iii) quantification of the after-tax impact of the Aldoxorubicin regulatory and commercial milestones.

29. With respect to Barclays' *Relative Value Analysis*, the Proxy Statement fails to disclose: (i) quantification of the tax savings from usage of net operating losses and future losses available to the combined company; and (ii) quantification of the individual inputs and the assumptions underlying the range of discount rates of 11.00% to 13.00%.

30. With respect to Barclays' *Selected Comparable Company Analysis – NantKwest and ImmunityBio*, the Proxy Statement fails to disclose the multiples and financial metrics for each of the comparable companies analyzed.

31. With respect to Barclays' *Equity Analyst Target Prices Analysis – NantKwest*, the Proxy Statement fails to disclose the individual price targets for NantKwest and the sources thereof.

32. Without such undisclosed information, NantKwest stockholders cannot evaluate for themselves whether the financial analyses performed by Barclays were based on reliable inputs and

assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Barclays' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

33. The omission of this material information renders the statements in the "Certain Unaudited Prospective Financial and Operating Information" and "Opinion of the Financial Advisor to the NantKwest Special Committee" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Special Committee's Advisors' Potential Conflicts of Interest***

34. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by the Special Committee's advisors, Barclays and Health Advances.

35. For example, the Proxy Statement sets forth:

> Barclays may have performed various investment banking services for NantKwest and ImmunityBio in the past, and expects to perform such services in the future, and may have received, and expects to receive, customary fees for such services. Specifically, other than in connection with the merger, Barclays has not performed any investment banking services for NantKwest, ImmunityBio or any other controlled affiliates of Dr. Soon-Shiong in the past two years pursuant to which compensation was received.

Proxy Statement at 141. The Proxy Statement fails, however, to disclose the amount of any fees Barclays expects to receive for the various investment banking services it has provided for NantKwest and ImmunityBio or any other controlled affiliates of defendant Soon-Shiong.

36. Additionally, the Company engaged Health Advances to assist the special committee in evaluating the product pipelines of both NantKwest and ImmunityBio and the preparation and/or review of financial projections and synergies related to a potential transaction. The Proxy Statement fails, however, to disclose any past services performed by Health Advances for NantKwest and

ImmunityBio or any other controlled affiliates of defendant Soon-Shiong and the amount of fees received for such services.

37. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

38. The omission of this information renders the statements in the "Background of the Merger" and "Opinion of the Financial Advisor to the NantKwest Special Committee" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

39. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of NantKwest will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

40. Plaintiff repeats all previous allegations as if set forth in full.

41. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

42. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy

Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's and ImmunityBio's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Barclays, and Barclays' and Advance Health's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

44. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

46. Plaintiff repeats all previous allegations as if set forth in full.

47. The Individual Defendants acted as controlling persons of NantKwest within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of NantKwest, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, NantKwest's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

injunctive relief, in her favor on behalf of NantKwest, and against defendants, as follows:

    A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to NantKwest stockholders;

    B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

    C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

    D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

    E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 16, 2021        **WEISSLAW LLP**
                                                  Joel E. Elkins

                                                  By: */s/ Joel E. Elkins*

                                                  Joel E. Elkins
                                                  9100 Wilshire Blvd., #725 E.
                                                  Beverly Hills, CA 90210
                                                  Telephone:  310/208-2800
                                                  Facsimile:  310/209-2348
                                                            -and-
                                                  Richard A. Acocelli
                                                  1500 Broadway, 16th Floor
                                                  New York, NY  10036
                                                  Telephone: 212/682-3025
                                                  Facsimile: 212/682-3010

                                                  *Attorneys for Plaintiff*